IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| WESTCHESTER FIRE INSURANCE COMPANY, | ) ) ) | Case No. 7:11-cv-00672-HMH |
| Plaintiff, | ) ) | **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | ) ) | |
| SAMUEL F. EAKIN, | ) ) | |
| Defendant. | ) ) ) | |

Defendant, Samuel F. Eakin ("Mr. Eakin"), submits this response opposing Plaintiff Westchester Fire Insurance Company's ("Westchester") Motion for Partial Summary Judgment on its indemnification claim.

### STATEMENT OF UNDISPUTED FACTS

Westchester is in the business of providing surety bonds to contractors and other companies, and provided a performance bond as surety to Sanders Brothers, Inc.[1] ("Sanders Brothers" or "Sanders Bros."), as principal, to secure the obligation of Sanders Brothers to perform construction work as required under its subcontract with Kellogg Brown & Root Services, Inc. ("KBR"). (Compl. Ex. A). The subcontract performance bond at issue named KBR as obligee and Sanders Brothers, Inc. as principal, in the penal sum of $ 1,186,877.10, for performance of a subcontract at Cape Canaveral Air Force Station in Florida. (Id. Ex. A). In consideration for Westchester's issuance of the surety bond, as principals, Sanders Brothers, Sanders Brothers Holdings, Inc., Pro Serv Sanders, Inc., and Alabama Southeast Mechanical –

---

[1] On June 21, 2010, a South Carolina circuit court issued an order placing the property of Sanders Brothers and related entities in receivership; Lawrence T. Englert is the duly appointed receiver of Sanders Brothers per the court's order. A copy of the Order Appointing a Receiver is attached at **Exhibit 1**.

Sanders, Inc. entered into an Agreement of Indemnity in favor of Westchester. (Id. Ex. B). The indemnity agreement is a form, boilerplate document created by Westchester, which Mr. Eakin signed individually and as an officer of Sanders Brothers.[2] (Id. Ex. B, at 3). Therein, the indemnitors agreed to "exonerate, indemnify, and keep indemnified [Westchester] from and against any and all liability for losses and/or expenses . . . and from and against any and all such losses and/or expenses which [Westchester] may sustain and incur" in connection with the subcontract performance bond. (Compl. Ex. B, at 1).

A dispute arose when KBR claimed that Sanders Brothers had performed defective work under the subcontract, and the dispute was submitted to arbitrations, where KBR was awarded $985,942.37. (Compl. ¶ 11). Thereafter, KBR sought enforcement of the subcontract performance bond and demanded that Westchester make payment. (Compl. ¶ 14, Ex. C). Westchester paid $1,082,053.30 in satisfaction of KBR's claim under the subcontract performance bond on August 11, 2010. (Compl. ¶ 17).

On July 12, 2010, before making payment to satisfy KBR's claim, counsel for Westchester sent a demand letter addressed to Mr. Eakin individually and as an officer of Sanders Bros., Sanders Bros. Holdings, Inc., Pro Serv Sanders, Inc., and Alabama Southeast Mechanical-Sanders, Inc.,[3] in which Westchester demanded indemnification from KBR's claim and the $985,942.37 arbitration award. (Compl. Ex. D). The letter also demanded that the indemnitors immediately post cash collateral on the claim. (Id. Ex. D).

---

[2] Notwithstanding that Sanders Brothers and others are indemnitors under the agreement, Westchester has never named any entity or individual other than Mr. Eakin as a party defendant herein. (Compl. Ex. B, at 1).

[3] The letter was also addressed to Mr. G. Jerome Ducote, Jr., who also individually signed the indemnity agreement with Westchester. (Compl. Ex. D).

On March 21, 2011, Westchester initiated the instant action under the indemnity agreement, naming Mr. Eakin as the sole defendant and seeking to recover the total amount of Westchester's payment of the KBR bond claim. (Compl. ¶ 2).

## MATERIAL FACTS IN DISPUTE

When Westchester sent its demand letter on July 12, 2010, the property of Sanders Brothers and related entities had been placed in a receivership per order of the South Carolina circuit court, such that only the duly-appointed receiver had the authority to make distributions on behalf of the corporate indemnitors. (Ex. 1 (Order Appointing a Receiver)). Moreover, in October 2010, the receiver sold Pro Serv Sanders, Inc. to an outside buyer, which generated monies close to the amount demanded by Westchester for payment of KBR's bond claim. (*See* Receiver's Fourth Report for the Period August 28, 2010 Through October 1, 2010, attached at **Exhibit 2**; Receiver's Fifth Report for the Period October 2 Through October 29, 2010, attached at **Exhibit 3**).

Although Westchester knew that Sanders Brothers had been placed in receivership, and although Westchester should and could have sought indemnification from Sanders Brothers as the primary obligor by also sending its demand letter to the receiver, Westchester nonetheless proceeded to seek indemnification from Mr. Eakin individually. (*See* Compl. Ex. D). Further, there is no evidence that Westchester ever sent a request for payment to the receiver, who, unlike Mr. Eakin, had exclusive access to the accounts and property of Sanders Brothers and related entities and who had the sole authority to make payments on their behalf. (*See* Ex. 1, at ¶ 3 ("Defendants (their agents, representatives and employees) are restrained from disposing of, transferring, conveying, or otherwise encumbering the Property or books, files, records and

accounts relating to the Property, and they and all other parties having property in their possession or under their control are hereby directed to deliver the same to the said Receiver.")).

## LAW AND ARGUMENT

Summary judgment is appropriate where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). When ruling on a motion for summary judgment, the courts are to construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255. Here, there is a genuine dispute of material fact regarding Westchester's conduct in failing to seek payment from any of the corporate entities by requesting the same of the duly-appointed receiver. (*See* Compl. Ex. D). In this regard, Westchester neither acted in good faith nor in a commercially reasonable manner, and summary judgment is therefore unwarranted.

In the construction context, an indemnity agreement serves to establish liability at the time of contract formation such that the parties can reasonably anticipate their obligations, insure against loss, and accurately forecast their costs related to a venture. *See* Rankin v. Smith, 147 S.E.2d 649, 652 (Ga. Ct. App. 1966). In other words, an indemnity agreement shifts liability from the legally responsible party to another party, the indemnitor, which, for a consideration, promises to indemnify and save harmless the indemnitee against liability of the indemnitee to a third person or against loss resulting from such liability." Thomasson v. Pineco, Inc., 328 S.E.2d 410, 411 (Ga. Ct. App. 1985 (citing Nat'l Bank of Monroe v. Wright, 48 S.E.2d 306, 308 (Ga. Ct. App. 1948)). In construing an indemnity agreement, a court reads it as it would any other contract. *See, e.g.*, Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284

(Tex. 1998) (stating that an indemnity agreement is to be construed "under the normal rules of contract construction"). "[The] primary goal, of course, is to determine the parties' intent." Id.; *see* In re Southco, Inc., 168 B.R. 95, 99 (Bankr. D.S.C. 1994).

Under South Carolina law, courts have allowed "a lender to by-pass the primary obligee and proceed initially against the guarantor." Smith v. Mandel, 66 F.R.D. 405, 407 (D.S.C. 1975). The South Carolina Supreme Court has also interpreted a guarantee agreement in such a way as to leave a guarantor largely at the mercy of a creditor. *See* Citizens & S. Nat'l Bank of SC v. Lanford, 313 S.C. 540, 543–44, 443 S.E.2d 549, 550–51 (1994). However, since 2001, South Carolina has adopted the revised Article 9 of the Uniform Commercial Code (UCC), along with revised Articles 3 and 4, with the effect that some defenses previously unavailable to a guarantor or secondary obligor may now offer some protection. *See* Richard R. Gleissner, *In Defense of the Guarantor*, 22 S. CAROLINA LAWYER 18, 20 (Nov. 2010). For example, the *Restatement (Third) of Suretyship & Guaranty* provides a number of general defenses, some of which are considered "fundamental to the guaranty relationship." Id. at 21. Additionally, the UCC includes a requirement of "commercial reasonableness." Id. at 20 (quoting S.C. Code Ann. § 36-9-610).

Here, although the event of Sanders Brothers' default under the subcontract gave rise to Westchester's ability to seek indemnification under the indemnity agreement, by failing to seek indemnification from Sanders Brothers as a corporate entity, Westchester failed to mitigate its damages and did not act in a commercially reasonable or good faith manner. Although in receivership, Sanders Brothers would have been financially able to perform its obligations as primary obligor and principal under the indemnity agreement. At the time that Westchester first sought indemnification under the agreement, the receiver had just recently been appointed and,

shortly thereafter, the receiver proceeded to sell Pro Serv Sanders, Inc., which generated actual substantial income to the receivership. (*See* Ex. 2; Ex. 3). Because Westchester's demand letter was not sent until July 12, 2010, it was sent after the receivership had been established, and, therefore, Mr. Eakin and other corporate managers had no access to any of the accounts or assets of Sanders Brothers and related entities. As such, a proper request for payment on the subcontract performance bond claim should have been addressed and sent to the receiver, but there is no evidence that Westchester ever made such a request. It would have been entirely reasonable for Westchester to seek indemnification from the receiver, and, had it done so, at a reasonable expense and by reasonable efforts Westchester could have obtained nearly the full amount that it now seeks against Mr. Eakin.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully submits that Plaintiff has not shown the absence of a genuine issue of material fact and partial summary judgment should not be granted on the issue of liability.

                Respectfully submitted,

                HARRISON, WHITE, SMITH & COGGINS, P.C.

                *s/Donald C. Coggins, Jr.*
                Donald C. Coggins, Jr. (Fed. ID No.: 198)
                178 West Main Street
                Post Office Box 3547 (29304)
                Spartanburg, South Carolina 29306
                (864) 585-5100
                dcoggins@spartanlaw.com
                Attorney for Defendant Samuel F. Eakin

May 24, 2012
Spartanburg, South Carolina